IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  09-cv-02207-CMA-KLM

JOSE MEDINA ESCOBAR,

     Plaintiff,

v.

WARDEN S. JONES,
ASSOCIATE WARDEN B. ALLEN,
DIRECTOR B. ZALMAN,
MAJOR HOLDITCH,
CAPTAIN K. FOSTER,
CAPTAIN J. DALTON,
LIEUTENANT MARTZ,
LIEUTENANT CHAVEZ,
SERGEANT A. LUNA,
SERGEANT P. BINDER,
SERGEANT J. WEST,
SERGEANT HARDRICK,
SERGEANT VAN DYKE,
SERGEANT HUDSPETH,
SERGEANT KELEMAN,
C/O D. GALLAGHER,
C/O BRYANT,
C/O A. DALTON,
C/O R. MARTINEZ,
C/O V. PASARO,
NURSE N. WALKER,
DOCTOR WRIGHT,
CAPTAIN HUERTAS, individually and as Unit Shift Commander,
LIEUTENANT VAN VELDER, individually and as Unit Supervisor,
SERGEANT POOL, individually and as D-Unit Technician,
C/O GIORDANO, and
C/O KAISER,

     Defendants.
_____

**ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Defendants' Motion for Summary Judgment**

1

[Docket No. 119; Filed May 31, 2011] (the "Motion"). Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C., the Motion has been referred to this Court for recommendation. [#120]. Plaintiff responded to the Motion on August 1, 2011 [#134], and Defendants did not submit a reply. The Court has reviewed the Motion, the Response, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court **RECOMMENDS** that the Motion [#119] be **GRANTED IN PART and DENIED IN PART** as stated herein.

## I. Summary of the Case

Plaintiff is a state prisoner at the Centennial Correctional Facility in Canon City, Colorado. Plaintiff initiated this lawsuit *pro se* on September 15, 2009, pursuant to 42 U.S.C. § 1983. [#3]. The governing pleading is the Third Amended Complaint, which is combined with the Second Amended Complaint, and was entered on February 9, 2010. *See* [#29]. Due to the extensive nature of the multiple allegations against the named Defendants, the Court lists the Claims and accompanying subparts below and identifies to which Defendant each subpart applies. Plaintiff requests compensatory and punitive damages and certain forms of injunctive relief. [#29-4] at 27.

1. <u>Claim One</u> (Second Am. Compl., [#29-4] at 16): Eighth Amendment violations, including use of excessive force, failure to protect and retaliation (which the Court evaluates pursuant to the First Amendment). Claim One identifies:

a. Defendant Zalman, Eighth Amendment failure to protect, arising from allegedly housing Plaintiff with known enemies in violation of a 1990 Settlement Agreement;

b. Defendants Jones, Allen, Holditch, Dalton and Foster, Eighth Amendment failure to protect, arising from allegedly housing Plaintiff with hostile inmates,

2

and Defendant Foster's alleged refusal to file Plaintiff's administrative grievances;

c.    Defendants West, Hardrick, Dalton, Martinez, and Luna, Eighth Amendment infliction of cruel punishment by allegedly depriving Plaintiff of food from May 11, 2007 through November 15, 2007, and allegedly using excessive force on Plaintiff;

d.  Defendant Keleman, Eighth Amendment infliction of cruel punishment by allegedly depriving Plaintiff of food, sleep, and medication, and by allegedly threatening Plaintiff to keep him from filing grievances, from November 15, 2007 through April 17, 2008;

e.  Defendants Martz, Van Dyke, Gallagher, Hudspeth, and Bryant, Eighth Amendment infliction of cruel punishment by allegedly using excessive force on Plaintiff, depriving Plaintiff of food, and filing false reports against Plaintiff, from April 17, 2008 through October 3, 2008, and December 4, 2008 through February 24, 2009, and by allegedly threatening to harm Plaintiff if he filed grievances;

f.  Defendants Binder, West, and Chavez, Eighth Amendment infliction of cruel punishment by allegedly depriving Plaintiff of food from February 24, 2009 through September 25, 2009, and by allegedly using excessive force against Plaintiff in retaliation for Plaintiff's filing of grievances;

g.  Defendant Pasaro, Eighth Amendment infliction of cruel punishment by allegedly contaminating Plaintiff's medication to cause him pain, and for allegedly filing false reports against Plaintiff;

h.  Defendant Wright, Eighth Amendment deprivation of medical care arising

3

from Plaintiff's alleged thyroid condition and hip pain; and

i.    Defendants Zalman, Jones, Allen, Holditch, and Dalton, Eighth Amendment infliction of cruel punishment by allegedly housing Plaintiff in administrative segregation for over 14 ½ years.

2.    Claim Two (Second Am. Compl., [#29-4] at 21): Fourteenth Amendment violations, including substantive and procedural due process and equal protection. Claim Two identifies:

a.  Defendant Zalman, for allegedly housing Plaintiff with known enemies in violation of a 1990 Settlement Agreement;

b.   Defendants Jones, Allen, Holditch, Dalton, and Foster, for allegedly causing subordinate officials to use excessive force against Plaintiff and for allegedly keeping Plaintiff in administrative segregation;

c.   Defendants West, Hardrick, Dalton, Martinez, and Luna, for allegedly depriving Plaintiff of food, confiscating his property, filing false reports against Plaintiff, labeling Plaintiff as a snitch and as a pedophile, using excessive force against Plaintiff, and committing these acts as retaliation for Plaintiff's filing of grievances;

d.  Defendant Keleman, for allegedly depriving Plaintiff of food, sleep, and medication, and allegedly creating a hostile living environment as retaliation against Plaintiff's filing of grievances;

e.   Defendants Martz, Van Dyke, Gallagher, Hudspeth, and Bryant, for allegedly depriving Plaintiff of food and sleep, using excessive force against Plaintiff, and filing false reports against Plaintiff;

f.  Defendants Binder, West, and Chavez, for allegedly depriving Plaintiff of

food, sleep, and medication, and using excessive force against Plaintiff;

g.  Defendant Pasaro, for allegedly depriving Plaintiff of medical care;

h.  Defendant Walker, for allegedly contaminating Plaintiff's medication, filing false reports against Plaintiff, and retaliating against Plaintiff for filing legal actions;

i.  Defendant Martz, for allegedly prejudicing the disciplinary hearing board against Plaintiff based on Plaintiff's history of filing grievances and lawsuits.

3.  <u>Claim Three</u> (Second Am. Compl., [#29-4] at 25): Intentional Infliction of Mental and Emotional Distress and Anguish, and Outrageous Conduct.   Claim Three identifies:

a.  Defendant Zalman, for allegedly housing Plaintiff with Plaintiff's enemies and in administrative segregation;

b.  Defendants Jones, Allen, Holditch, Dalton, and Foster, for allegedly failing to protect Plaintiff from harm from their subordinates;

c.  Defendants Martz, Chavez, Binder, West, Hardrick, Luna, Keleman, Van Dyke, and Hudspeth, for allegedly inflicting physical pain on Plaintiff in retaliation;

d.  Defendants A. Dalton, R. Martinez, Gallagher, Bryant, Pasaro, and unidentified persons, for allegedly inflicting physical pain on Plaintiff and depriving Plaintiff of food, water, sleep, and medical care;

e.  Defendant Walker for allegedly depriving Plaintiff of medical care and medicine; and

f.  Defendant Wright for allegedly discontinuing Plaintiff's thyroid medication in retaliation for Plaintiff's legal actions.

4.  <u>Claim One</u> (Third Am. Compl., [#29-3] at 4): Eighth Amendment violations, including "abuse of power," failure to protect and retaliation (which the Court evaluates pursuant to the First Amendment).  Claim One identifies:

a.  Defendant Huertas for alleged threats against Plaintiff in retaliation for Plaintiff's filing of administrative grievances;

b.  Defendants Van Velder and Pool, for alleged harmful acts by their subordinates; and

c.  Defendants Kaiser and Giordano for alleged threats against Plaintiff in retaliation for Plaintiff's filing of administrative grievances.

5.  <u>Claim Two</u> (Third Am. Compl., [#29-3] at 5): Fourteenth Amendment violations, including substantive due process and equal protection.  Claim Two identifies:

a.  Defendant Huertas for alleged threats against Plaintiff in retaliation for Plaintiff's filing of administrative grievances;

b.  Defendants Huertas, Van Velder, and Pool as supervisors, for allegedly failing to protect Plaintiff from subordinates who caused (or threatened to cause) Plaintiff physical harm; and

c.  Defendants Kaiser and Giordano for alleged threats against Plaintiff in retaliation for Plaintiff's filing of administrative grievances.

4.  <u>Claim Three</u> (Third Am. Compl., [#29-3] at 6): Intentional Infliction of Mental and Emotional Distress and Anguish, and Outrageous Conduct.  Claim Three identifies:

a.  Defendant Huertas, Van Velder, and Pool, for allegedly inflicting pain on Plaintiff and allegedly assigning defendants in previous lawsuits filed by Plaintiff to Plaintiff's care; and

b.  Defendants Huertas, Kaiser, and Giordano, for allegedly threatening

6

physical harm against Plaintiff.

## II.  Fed. R. Civ. P. 56 Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Under Fed. R. Civ. P. 56(c), summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 277 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law.  *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323).  When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Id.* at 671.  If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor.  *See Anderson*, 277 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).  The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission*

*Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324).

Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

When considering Plaintiff's Second and Third Amended Complaints [#29] and Response [#134], the Court is mindful that it must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be a *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, Plaintiff, as a *pro se* litigant, must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

As an additional preliminary matter, the Court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). To this end, the Court notes the well-established law that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215 (1976). Accordingly, courts should interfere with the management of prisons only under exceptional

and compelling circumstances.  *Taylor v. Freeman*, 34 F.3d at 266, 268-70 (4th Cir. 1994).

Indeed, the Tenth Circuit has stated that it "abhor[s] any situation or circumstance requiring

the intervention of the federal courts in matters involving the administration, control and

maintenance by the sovereign states of their penal systems.  It is a delicate role assigned

to the federal courts to display that restraint so necessary 'in the maintenance of proper

federal-state relations.'"  *Battle v. Anderson*, 564 F.2d 388, 392 (10th Cir. 1977) (citation

omitted).  As such, "sweeping intervention in the management of state prisons is rarely

appropriate when exercising the equitable powers of the federal courts."  *Taylor*, 34 F.3d

at 269 (citations omitted).

## III.  Analysis

Defendants assert that summary judgment should enter in their favor regarding

Plaintiff's Claim One in both the Second and Third Amended Complaints for multiple

reasons.  Defendants contend that they are entitled to qualified immunity, that it is Plaintiff

who refuses to accept food, newspapers, and medical appointments, and that Plaintiff

cannot prove a *de minimus* injury as required by the Prison Litigation Reform Act ("PLRA")

in support of his excessive force claims.  Moreover, Defendants suggest that Defendants

Zalman, Jones, Van Velder, and Pool should be dismissed from this action on the basis

that supervisor liability alone is not a proper ground for relief.  Defendants attest that

Plaintiff has failed to exhaust administrative remedies as to certain claims, and in large part,

Plaintiff cannot support his allegations with any evidence, as demonstrated by the facility's

responses to the administrative grievances Plaintiff has submitted.

Defendants further argue that Plaintiff presents merely conclusory allegations in his

Claim Two in both the Second and Third Amended Complaints, and he fails to state a

colorable claim based on alleged violations of Fourteenth Amendment due process or equal

protection.  Defendants aver that Plaintiff did not submit notice as required by Colorado Governmental Immunity Act concerning his state-based claim for intentional infliction of emotional distress, thus Claim Three from both Complaints should be dismissed due to Plaintiff's failure to comply with the Colorado state remedy procedure.

The majority of Plaintiff's Response simply restates or asserts new factual allegations related to those stated in the Second and Third Amended Complaints.  *See* [#134].  Plaintiff contends that Defendant Jones read at least twelve of the grievances Plaintiff had filed, thus she was aware of his allegations and his "protected conduct."  *Id.* at 2.  Plaintiff additionally emphasizes that he was unable to properly file grievances and exhaust administrative remedies due to the alleged improper conduct by Defendants.  *See id.* at 6.  Plaintiff includes copies of certain grievances and grievance responses as exhibits to his Response.

The Court notes at the outset of its analysis of Defendants' Motion that once again, counsel for Defendants presents a remarkably deficient motion for summary judgment.[1] Counsel fails to include a statement of undisputed facts as required by D.C.COLO.LCivR 56.1A., and does not reference any affidavit or declaration from correctional facility personnel to support Defendants' contentions.   The Motion cites only to grievance responses as the evidentiary basis for Defendants' assertion that Plaintiff cannot prove his allegations against Defendants regarding many of Plaintiff's Claim One subparts. Defendants merely state that "no corroboration exists to support Plaintiff's allegations," and

---

[1]  This Motion is not the first deficient dispositive motion filed by counsel for Defendants in relation to Plaintiff Escobar.  *See Escobar v. Reid*, 668 F. Supp. 2d 1260, 1271, 1280 (D. Colo. 2009) (noting that "Defendants' Motions are not the paradigm of thorough lawyering," as defendants failed to include any affidavit or declaration in support of their request for summary judgment; further noting that Defendants failed to comply with D.C.COLO.LCivR 56.1A.; and accepting allegations in Plaintiff's Complaint as true for purposes of adjudicating the motion for summary judgment).

at the same time, Defendants fail to include any evidence which corroborates their positions stated in the administrative grievance responses.  [#119] at 11.

As explained above, Defendants "may make [their] prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler*, 144 F.3d at 671.  However, the fact that, during the administrative process, Defendants found a lack of evidence to support Plaintiff's administrative grievances does nothing to advance Defendants' position on summary judgment.  Defendants cannot avoid a triable issue of fact by relying on their own factual conclusions without further evidence.  Blind enforcement of Defendants' factual conclusions by the Court would make a mockery of the independent review required by the American system of justice and applicable rules.  Therefore, the Court rejects Defendants' arguments premised on the grievance responses.  The Court further rejects Defendants' assertion that Plaintiff failed to administratively exhaust certain subparts of his claims as required by the PLRA, because Defendants present no affidavit or grievance record in support of this averment.  Just as the Court may not act as a *pro se* litigant's advocate by constructing arguments on his or her behalf, the Court will not make Defendants' case for them.  *See Whitney*, 113 F.3d at 1173-74.  Counsel for Defendants is on notice that this conduct is an unacceptable failure of professional responsibility.  **Future dispositive motions likewise failing to meet the most basic requirements stated in the federal and local rules will be summarily denied and may result in the imposition of sanctions against counsel for Defendants.**

Nonetheless, certain arguments raised by Defendants bear review.  The Court first addresses the state exhaustion issue as to Plaintiff's Claim Three from both the Second and Third Amended Complaints.  Second, the Court analyzes Defendants' assertion of

qualified immunity as to Plaintiff's Claim Two from both Complaints.  Third, the Court evaluates Defendants' assertion of qualified immunity as to Plaintiff's Claim One from both Complaints, including whether the relevant subparts of Plaintiff's Claim One from both Complaints withstand Defendants' contentions that Plaintiff fails to establish the requisite personal participation on part of the supervisors named by Plaintiff; whether Plaintiff can prove that he suffered a physical injury as related to his allegations of excessive force and to his claim for compensatory damages; and finally, whether Plaintiff presents adequate factual evidence to rebut the presumption of Defendants' immunity from suit as to the remainder of his dual Claim One.  For purposes of this Recommendation, and in light of Defendants' failure to support their assertion that Plaintiff has failed to exhaust administrative remedies, the Court accepts Plaintiff's Claims as exhausted.

## A.      Claim Three: Colorado Governmental Immunity Act

In both Complaints' Claim Three, Plaintiff alleges state tort claims of intentional infliction of emotional distress and outrageous conduct.  Under the Colorado Governmental Immunity Act (the "Act"), a plaintiff seeking to bring state law claims against state defendants must provide written notice within 180 days of discovering the asserted injury. *Yaklich v. Grand Cnty.*, 278 F. App'x 797, 803-04 (10th Cir. 2008) (citing Colo. Rev. Stat. § 24-10-109(1)).  "Compliance with the 180-day notice requirement is a jurisdictional prerequisite and failure to comply with it is an absolute bar to suit." *Id.* (citations omitted).

In his deposition, Plaintiff admitted that he did not file a notice of claim under the Colorado Governmental Immunity Act regarding his state law claim.  [#119-14] at 7, 86:10-14.  Plaintiff does not address this issue further in his Response.  Therefore, the Court finds that Defendants have established that Plaintiff failed to comply with the Act's required notice provision, and no genuine issue of material fact exists as to Plaintiff's dual Claim

Three.  Thus, judgment should be entered in Defendants' favor as to Claim Three stated in the Second and Third Amended Complaints.  *See Jones v. Cowens*, No. 09-cv-01274-MSK-MJW, 2010 WL 3239286, at *3 (D. Colo. Aug. 12, 2010) (granting defendant's motion for summary judgment as to plaintiff's tort claim due to plaintiff's failure to comply with the Act's notice requirement).

## B.    Qualified Immunity

Defendants argue that they are entitled to qualified immunity as to Plaintiff's Claims One and Two stated in both Complaints.   Government officials are entitled to qualified immunity from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person in their position would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity also offers protection from trial and other burdens of litigation.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

"[B]ecause qualified immunity is 'designed to protect public officials from spending inordinate time and money defending erroneous suits at trial,'" the Court reviews summary judgment motions involving a qualified immunity defense "somewhat differently" from other motions for summary judgment.  *Clark v. Edmunds*, 513 F.3d 1219, 1221 (10th Cir. 2008) (internal citations omitted).  When a defendant asserts a qualified immunity defense in a summary judgment motion, "[t]he threshold inquiry is whether the . . . evidenced facts . . . taken in the light most favorable to the plaintiff show a constitutional violation."  *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Next, the Court must consider whether Plaintiff has shown that "the constitutional right was clearly established at the time of the alleged unlawful activity."  *Swanson v. Town of Mountain View, Colo.*, 577 F.3d 1196, 1199 (10th Cir. 2009) (citing *Pearson v. Callahan*,

555 U.S. 223, 232 (2009).

In order for Plaintiff's claim "to survive summary judgment, the record must contain facts that rebut the presumption of [Defendant's] immunity from suit." *Medina v. Cram*, 252 F.3d 1124, 1130 (10th Cir. 2001) (discussing special nature of qualified immunity defense); *see Rounds v. Corbin*, No. 04-cv-02532-CMA-KMT, 2009 WL 2982006, at *2-3  (D. Colo. Sept. 11, 2009) (denying summary judgment motion on qualified immunity where plaintiff "submitted more than unsupported allegations" to support his claim); *Kelley v. City of Albuquerque*, 375 F. Supp. 2d 1183,1203 n.7 (D.N.M. 2004) (citing *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988)) (noting that to overcome defendant's motion for summary judgment on basis of qualified immunity, "plaintiff must do more than rest on its own speculation or pleadings"); *Anaya v. Crossroads Managed Care Systems, Inc.*, 195 F.3d 584, 593 (10th Cir. 1999) (denying summary judgment on qualified immunity where the "[t]he record supports the allegation that the plaintiffs' Fourth Amendment rights were violated"); *Bruning v. Pixler*, 949 F.2d 352, 356 (10th Cir. 1991) (noting that when "a government official raises the defense of qualified immunity in a motion for summary judgment, the plaintiff must produce facts sufficient to show both that the defendant's alleged conduct violated the law and that [the] law was clearly established when the alleged violation occurred").

Plaintiff bears the burden of proving that Defendant's actions violated clearly established law.  *Guffey v. Wyatt*, 18 F.3d 869, 871 (10th Cir. 1994).  *See Saucier*, 533 at 201("[W]hether the right was clearly established . . . must be undertaken in light of the specific context of the case, not as a broad general proposition.").  "[T]he right the official is alleged to have violated must have been "clearly established" in a particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a

reasonable official would understand that what he was doing violates that right." *Id.* at 202 (citation omitted). "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular [official] conduct. . . . If the officer's mistake as to what the law requires is reasonable, the officer is entitled to the immunity defense." *Saucier*, 533 U.S. at 205. After all, "qualified immunity precludes the imposition of liability for 'all but the *plainly incompetent* or those who knowingly violate the law.'" *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1251 (10th Cir. 2003) (citation omitted).

It is no longer mandatory that the Court first consider whether Plaintiff has demonstrated a constitutional violation by Defendants; using its discretion, the Court may move immediately to an analysis of whether the right at issue was clearly established at the time of the alleged violation. *Pearson*, 555 U.S. at 236. In this matter, it is appropriate to first address whether Plaintiff has demonstrated that Defendants violated his constitutional rights, as alleged in the Second and Third Complaints, and as further explained below.

With his Response, Plaintiff presents only his own affidavit and certain grievances and grievance responses in support of his contentions. *See* [#134]. However, "conclusory and self-serving affidavits are not sufficient" to establish a genuine issue of material fact. *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995). Plaintiff attested to the veracity of both the Second and Third Amended Complaints pursuant to 28 U.S.C. § 1746, as demonstrated by the "Declaration under Penalty of Perjury" at the conclusion of both Complaints. [#29-3] at 7; [#29-4] at 27. The Court will therefore treat the Second and Third Amended Complaints as affidavits, and accepts the allegations stated therein as true in the absence of a statement of material facts proffered by Defendants. *See Green v. Branson*, 108 F.3d 1296, 1301 n.1 (10th Cir. 1997). For the reasons stated below, even accepting

the allegations in the Second and Third Amended Complaints as true, the Court finds that Plaintiff fails to rebut the presumption of qualified immunity enjoyed by Defendants as to all subparts of Plaintiff's Claims One and Two from both Complaints, with one exception: the subpart of Plaintiff's Claim One from his Second Amended Complaint alleging an Eighth Amendment violation premised on the deprivation of food.  The Court's conclusions are further explained as follows.

### 1.    Claim Two

In both Complaints' Claim Two, Plaintiff contends that Defendants violated his Fourteenth Amendment rights to substantive and procedural due process and equal protection under the law.  Defendants argue that Plaintiff does nothing more than present a series of conclusory statements that are insufficient to support an equal protection or due process claim.  [#119] at 14.  The Court agrees.

### a.    Equal Protection

The Equal Protection Clause of the Fourteenth Amendment prohibits the government from treating similarly situated individuals differently. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *see also Buckley v. Valeo*, 424 U.S. 1, 93 (1976) (recognizing that the "[e]qual protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment").  In order for a plaintiff to state an equal protection claim, he must allege that the defendants either denied him a fundamental right or provided differential treatment based on a suspect classification.  *Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir.1995).  If the plaintiff is not a member of a protected class and does not assert a fundamental right, the Court must only determine whether the alleged discriminatory action has a rational basis.  *Id.*; *see also Gwinn v. Awmiller*, 354 F.3d 1211, 1228 (10th Cir. 2004) (holding that "absent an allegation of a suspect classification, our

review of prison officials' differing treatment of various inmates is quite deferential" and considers only whether the treatment was "reasonably related to a legitimate penological purpose").

Plaintiff's claim is subject to dismissal where he fails to identify any inmate similarly situated to him. *Id.*; *see also Keck v. Zenon*, 240 F. App'x 815, 819-20 (10th Cir. 2007) (dismissal of equal protection claim proper when inmate fails to offer facts that similarly situated inmates subject to administrative segregation); *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994) (given that decision to segregate inmate was discretionary and based upon a number of factors, dismissal proper when inmate unable to identify similarly situated inmate). Here, Plaintiff has failed to identify the suspect classification that applies to his allegations, and Plaintiff fails to name with any specificity other allegedly similarly situated inmates who were treated differently from him. Plaintiff thus does not state a colorable claim for relief based on equal protection. The Court finds that no genuine issue of material fact exists as to the portions of Plaintiff's dual Claim Two that assert a violation of the Equal Protection Clause of the Fourteenth Amendment, and judgment should be entered in Defendants' favor on this subpart of Plaintiff's Claim Two from his Second and Third Amended Complaints.

### b.    Due Process

Plaintiff appears to combine substantive and procedural due process in his Claim Two assertions. The Court addresses each separately.

### i.    Procedural Due Process

Procedural due process protects the individual against "arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). In general, a plaintiff must make two showings in order to proceed on a procedural due process claim. *See Bartell v.*

*Aurora Pub. Sch.*, 263 F.3d 1143, 1149 (10th Cir. 2001). First, a plaintiff must demonstrate that he possesses a protected liberty or property interest. *Id.* Second, a plaintiff must show the procedures utilized were inadequate under the circumstances. *Id.* at 1149. Here, Plaintiff fails to make either showing. Plaintiff does not identify which factual descriptions stated in both sets of Claim Two raise a procedural due process issue, nor does Plaintiff attempt to address any form of procedure utilized by the Defendants that was somehow deficient. Thus, Plaintiff fails to state a colorable claim pursuant to his constitutional right to procedural due process. The Court finds that no genuine issue of material fact exists as to the portions of Plaintiff's dual Claim Two that assert a violation of procedural due process pursuant to the Fourteenth Amendment, and judgment should be entered in Defendants' favor on this subpart of Plaintiff's Claim Two from his Second and Third Amended Complaints.

### ii.    Substantive Due Process

As indicated above, Plaintiff alleges that both his procedural and substantive due process rights were violated. Despite the varying labels Plaintiff has attached to his myriad claims, and his attempts to package each claim under multiple constitutional dimensions, the Court is not rigidly guided by Plaintiff's labels. *See Castro v. United States*, 540 U.S. 375, 381 (2003) (noting that it is appropriate for federal courts to ignore the legal labels attached to a pro se party's claims "to create a better correspondence between the substance of [the party's claims] and [the] underlying legal basis"). Substantive due process claims are disfavored if the claim can be analyzed under "an explicit textual source of constitutional protection." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Most of the allegations of Plaintiff's Claim Two as stated in both Complaints are more properly analyzed pursuant to the more specific constitutional rights under which they arise. For example,

certain of Plaintiff's allegations implicate the protections against retaliation as provided by the First Amendment (and in any event, most of Plaintiff's dual Claim Two simply repeats the allegations stated in his dual Claim One).  The Court construes Claim Two from both Complaints as such and addresses Plaintiff's substantive due process allegations below.

### 2.    Claim One

The Court first addresses Defendants' arguments that Plaintiff cannot establish the requisite personal participation by certain Defendants, and that Plaintiff cannot prove that he sustained the requisite physical injury for certain subparts of his Claim One.  Then, the Court categorizes the remaining subparts of Plaintiff's dual Claim One into violations of the Eighth Amendment in the forms of housing (failure to protect from hostile inmates and imposition of long-term administrative segregation), deprivation of food, and deliberate indifference to medical needs; and violations of the First Amendment protection against retaliation (threats and filing of false reports) for the filing of administrative grievances.  The Court finds that Defendants are entitled to qualified immunity and judgment should be entered in their favor as to all of the dual Claim One subparts, with the exception of Plaintiff's allegations of deprivation of food in violation of the Eighth Amendment.

### a.    Personal Participation

"Individual liability under [42 U.S.C.] § 1983 must be based on personal involvement in the alleged constitutional violation."  *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (citing *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir.1996)); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir.1976) ("Personal participation is an essential allegation in a Section 1983 claim." (citations omitted)).  A defendant was personally involved in an alleged constitutional violation only if there is an "affirmative link" between his or her conduct and the described violation.  *Stidham v. Peace Officer Stds. & Training*, 265 F.3d

1144, 1156 (10th Cir. 2001).  Because of the "affirmative link" requirement, a defendant in a position of general supervisory authority cannot be held vicariously liable for constitutional violations committed by his or her subordinates.  *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) ("Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights."); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) ("[S]upervisor status by itself is insufficient to support liability." (citing *Rizzo v. Goode*, 423 U.S. 362, 376 (1976))); *Ruark v. Solano*, 928 F.2d 947, 950 (10th Cir. 1991) ("'[T]here is no concept of strict supervisor liability under section 1983.'" (citation omitted)).

Courts have explained that a defendant in a supervisory position may be personally involved in an alleged constitutional violation committed by his or her subordinates in two situations.  First, supervisor liability may arise when the supervisor was personally involved in directing the subordinates to take the action that resulted in the alleged constitutional violation.  *Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992). Second, supervisor liability may arise when the supervisor had actual knowledge that the subordinates were committing the alleged constitutional violation and acquiesced in its commission.  *Id.* (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990) (stating that supervisor liability requires "allegations of personal direction or of actual knowledge and acquiescence")).  However, the simple fact that a supervisor knew of and acquiesced in a constitutional violation committed by the subordinates may no longer establish that he or she was personally involved in the violation.  *See Arocho v. Nafziger*, 367 F. App'x 942, 947 n.4 (10th Cir. 2010) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).

Plaintiff identifies Defendants Jones, Allen, Zalman, Holditch, Van Velder, and Pool

as supervisors in his Second and Third Amended Complaints. *See* [#29].  Review of the Second and Third Amended Complaints demonstrates to the Court that the allegations against these supervisory Defendants are minimal and conclusory, and arise merely from their positions as supervisors.[2]  Plaintiff fails to allege with particularity that these Defendants instructed subordinates to violate Plaintiff's constitutional rights, nor does Plaintiff describe how these Defendants may have had actual knowledge that constitutional violations were taking place.  Plaintiff's argument that actual knowledge was gained through review of Plaintiff's filed grievances is unavailing; this assertion simply suggests that the reviewing Defendant knew of Plaintiff's *allegations*, not that the Defendant had actual knowledge of an occurring violation.  Therefore, the Court finds that no genuine issue of material fact exists as to the supervisory Defendants.  The Court recommends that judgment be entered in favor of Defendants Jones, Allen, Zalman, Holditch, Van Velder, and Pool as to all claims against them due to lack of the requisite personal participation pursuant to Section 1983.

### b.    Absence of Physical Injury

"A claim of excessive force requires some actual injury that is not de minimis, be it physical or emotional."  *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007).  Plaintiff asserts throughout his Second and Third Amended Complaints that he was subjected to excessive force by Defendants; however, Plaintiff admitted in his deposition that he has no evidence of physical injury resulting from the allegations in the Second and Third Amended

---

[2]  Plaintiff stated during his deposition that he did not have any documents or evidence that Defendant Zalman did anything to him during the time frame relevant to the Second and Third Amended Complaints. [#119-14] at 3, 20:1-4.  Plaintiff provides no indication to the contrary in his Response.  The same holds true for Defendant Jones.  *See id.* at 4, 21:17-22:10.  Additionally, Plaintiff admitted that Defendants Jones, Allen, Holditch, Dalton, and Foster were not responsible for delivering food to his cell.  *Id.* at 6, 30:2-22.

Complaints. [#119-14] at 8, 90:15-23. In light of Plaintiff's admission, no genuine issue of material fact exists as to whether Plaintiff endured an actual, physical injury related to the allegations in the Second and Third Amended Complaints. Therefore, the Court recommends that judgment be entered in favor of Defendants on all parts of Plaintiff's dual Claims One and Two that assert the use of excessive force.

Additionally, 42 U.S.C. § 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Section 1997e(e) bars compensatory damages for mental and emotional injuries suffered by a prisoner (regardless of the nature of the right asserted) in the absence of physical injury. *Harris v. Matthews*, 417 F. App'x 758, 763 n.9 (10th Cir. 2011) (unreported). However, this provision does not preclude recovery of nominal or punitive damages for violations of a prisoners' constitutional rights, or requests for declaratory or injunctive relief. *Id.* (citations omitted). In light of Plaintiff's admission regarding his lack of physical injury, the Court finds that no genuine issue of material fact exists as to Plaintiff's request for compensatory damages. Thus, the Court recommends that judgment be entered in favor of Defendants as to Plaintiff's request for compensatory damages (paragraph A of [#29-4] at 27).

### c.    Violations of the Eighth Amendment

The Eighth Amendment requires that "prison officials . . . ensure that inmates receive adequate food, clothing, shelter, and medical care, and [that they] 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). The Court's analysis of Plaintiff's subparts brought pursuant to the Eighth Amendment involves both an objective and a subjective component. *Wilson v.*

22

*Seiter*, 501 U.S. 294, 298 (1991). As to the objective component, the Court considers whether Plaintiff was deprived of a sufficiently serious basic human need, *i.e.*, an extreme deprivation. "Because discomfort is 'part of the penalty that criminal offenders pay for their offenses against society, . . . only those deprivations denying 'the minimal civilized measures of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citations omitted).

As to the subjective component, the Court considers whether the Defendants at issue intended the harm, *i.e.*, acted with deliberate indifference to the harm that could result. Deliberate indifference can only be proved by showing that Defendants "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837. The subjective component requires a showing of "obduracy and wantonness." *Whitely v. Albers*, 475 U.S. 312, 319 (1986).

This standard recognizes a balance between "the exigencies of running a prison" and the "'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" *DeSpain v. Uphoff*, 264 F.3d 965, 973 (10th Cir. 2001) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)). Moreover, "[t]he Eighth Amendment 'does not mandate comfortable prisons,' and conditions imposed may be 'restrictive and even harsh.'" *Barney v. Pulsipher*, 143 F.3d 1299, 1311 (10th Cir. 1998) (citation omitted). Thus, while prison officials must take reasonable measures in securing a safe and humane environment for prisoners, the Court should take into account the circumstances of the challenged conduct. *Id.* at 974; *see also Hudson*, 503 U.S. at 5-6 (holding that a court should give wide-ranging deference to prison staff).

#### i.   Housing:   Failure   to   Protect   and   Administrative Segregation

Plaintiff asserts that Defendants Dalton and Foster have failed to protect him from other correctional facility employees who were named as defendants in previous lawsuits filed by Plaintiff and from other inmates allegedly hostile to Plaintiff.  In relation to a failure to protect claim, Plaintiff must provide sufficient factual allegations indicating that his conditions of incarceration posed a substantial risk of serious harm.  *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003).  Furthermore, Plaintiff must provide sufficient factual allegations indicating that Defendants Dalton and Foster were "both aware of facts from which the inference could be drawn that a substantial risk of harm exist[ed], and [they drew] the inference."  *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 809 (10th Cir. 1999).  Here, Plaintiff fails to meet either requirement.  Plaintiff provides no details about the contended serious harm: he does not identify the correctional facility employees or hostile inmates against whom he was allegedly not protected, nor does he give dates and circumstances relevant to the allegations.  These allegations are thus unsubstantiated and judgment should be entered in favor of Defendants Dalton and Foster as to this subpart of Plaintiff's Claim One.

Plaintiff, in passing, asserts that Defendants West, Hardrick, Dalton, Martinez, and Luna informed other inmates that Plaintiff is "a snitch and pedophile."  [#29-4] at 17.  However, this allegation, like that above, is unsubstantiated and speculative.  Plaintiff does not give any detail in relation to this contention, nor does he state that he suffered any harm as a result.  Thus, judgment should be entered in favor of Defendants West, Hardrick, Dalton, Martinez, and Luna as to this subpart of Plaintiff's Claim One.

Regarding Plaintiff's claim premised on his detention in administrative segregation,

the Court refers to its previous adjudication of the same claim in *Escobar v. Reid*, 668 F. Supp. 2d 1260, 1301 (D. Colo. 2009).    As explained before, mere placement in administrative segregation does not, on its own, implicate a liberty interest.    *Talley v. Hesse*, 91 F.3d 1411, 1413 (10th Cir. 1996); *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994). That is, a prisoner has no inherent constitutional right to not be placed in disciplinary confinement.    *See Sandin v. Connor*, 515 U.S. 472, 487 (1995).    The segregation of a prisoner as a form of punishment or as administrative management of a correctional facility is not an unexpected incident of a criminal sentence and does not "present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest" protected by the Due Process Clause.  *Id.* at 485; *see also Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996).  Neither does placement in administrative segregation alone give rise to a substantial risk of serious harm in terms of an alleged Eighth Amendment violation.  *See Driggers v. Clark*, 422 F. App'x 747, 750 (10th Cir. 2011) (unpublished) ("[A]dministrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." (citation omitted)). Therefore, in the absence of any factual allegations other than the simple fact that Plaintiff allegedly has been held in administrative segregation, judgment should be entered in favor of Defendants as to this subpart of Plaintiff's Claim One.

### ii.    Deprivation of Food

Plaintiff contends that Defendants West, Hardrick, Dalton, Martinez, Luna, Keleman, Martz, Van Dyke, Gallagher, Hudspeth, Bryant, Binder, and Chavez deprived Plaintiff of "breakfast and/or lunch, and/or supper," from May 11, 2007 through September 25, 2009. *See* [#29-4] at 17.   Courts have found that a substantial deprivation of food may be sufficiently serious to state a conditions of confinement claim pursuant to the Eighth

25

Amendment.  *See Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002); *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999); *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983).  To state a claim for food deprivation, a prisoner must allege both (1) a "sufficiently serious" deprivation of "the minimal civilized measure of life's necessities" and (2) "deliberate indifference" by prison officials to a "substantial risk of serious harm to an inmate." *Strope v. Sebelius*, 189 F. App'x 763, 766 (10th Cir. 2006) (unpublished decision) (citing *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (quotations omitted)).  "While no single factor controls the outcome of these cases, the length of exposure to the conditions is often of prime importance." *DeSpain*, 264 F.3d at 974.  In this regard, "the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration." *Id.* (citations omitted).

Here, Plaintiff contends that Defendants withheld food in varying degrees for varying lengths of time over a period of two years, resulting in Plaintiff's loss of nearly 30 pounds. *See* [#29-4].  Plaintiff believes Defendants withheld food as a direct result of Plaintiff's filing of grievances against correctional facility employees, and asserts that Defendants tried to harm Plaintiff's fingers if he reached for a meal tray.  *See id.* at 17-18.  Accepting these allegations as true, the Court finds that the two prongs of an Eighth Amendment claim are met.  First, the withholding of food over a period of two years, which resulted in weight loss of 30 pounds, may, if true, constitute an objectively serious deprivation within the meaning of the Eighth Amendment.  Second, that Defendants struck Plaintiff's fingers if he reached for a meal tray, if true, may show that Defendants acted with the subjective wilfulness required to state a violation of the Eighth Amendment.  *See Escobar*, 668 F. Supp. 2d at

1297 (finding genuine issue of material fact related to Plaintiff's claim alleging the deprivation of food resulting in his loss of 30 pounds).  As the Supreme Court decision establishing that prisoners must be provided with adequate food was issued in 1994, this law was clearly established at the time of the alleged violations.  *See Farmer*, 511 U.S. at 832.  Plaintiff's allegations state a viable constitutional violation, and the law was clearly established as to an inmate's right to adequate food at the time of the alleged violation, thus the Court finds that Plaintiff's allegations rebut Defendants' asserted entitlement to qualified immunity as to this subpart of Plaintiff's Claim One.  Other than the grievance responses which the Court has rejected for the reasons stated above, Defendants do not provide any evidence to the contrary.  Therefore, the Court recommends that Plaintiff's claim asserting deprivation of food against Defendants West, Hardrick, Dalton, Martinez, Luna, Keleman, Martz, Van Dyke, Gallagher, Hudspeth, Bryant, Binder, and Chavez move forward in this litigation.

### iii.     Deliberate Indifference to Medical Needs

A prison official's deliberate indifference to an inmate's serious medical needs violates the inmate's Eighth Amendment right to be free from cruel and unusual punishment. *Estelle*, 429 U.S. at 104.  To establish a claim for deliberate indifference, a plaintiff must first prove that objectively, his medical need is "sufficiently serious." *Farmer*, 511 U.S. at 834.  A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (citation omitted).  Second, the plaintiff must prove that, subjectively,  the prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837.  That is, "the official must both be aware of

facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Plaintiff avers that Defendant Walker contaminated Plaintiff's medication with lotions and perfumes that taste foul, "rendering them unconsumable." [#29-4] at 19.  Although the taste of perfume or lotion lingering on medication may be repulsive, Plaintiff has not alleged that such conduct rendered the medication toxic or made him ill.  *See Escobar*, 2011 WL 3665391 at *5 (concluding the same in regards to similar allegations of contaminated food). The Court finds that this allegation does not state an excessive, as opposed to potentially negligent, risk to Plaintiff's health or safety.  Thus, the Court recommends that judgment be entered in favor of Defendant Walker as to this subpart of Plaintiff's Claim One.

Plaintiff contends that Defendant Wright discontinued Plaintiff's thyroid medication and has not assigned Plaintiff to a bottom-bunk designation, in violation of Plaintiff's right to medical care.  [#29-4] at 20.  However, Plaintiff also avers that Defendant Wright has conducted medical examinations of Plaintiff, albeit brief ("30 second[s]"), and has instructed Plaintiff to purchase aspirin.  *Id.*

"A mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment."  *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980).  A prisoner does not have a valid claim of deliberate indifference simply because he was denied "a particular course of treatment" that he desired.  *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006).  "[A] prison doctor remains free to exercise his or her independent professional judgment."  *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997).  Although Defendant Wright's treatment of Plaintiff may not be that which Plaintiff believes is due, and perhaps may be negligent, it is medical treatment nonetheless and

28

does not constitute deliberate indifference pursuant to the Eighth Amendment.  Thus, the Court recommends that judgment be entered in favor of Defendant Wright as to this subpart of Plaintiff's Claim One.

### d.    First Amendment Retaliation

In Claim One of Plaintiff's Second Amended Complaint, Plaintiff asserts that Defendant Foster threatened to keep Plaintiff at the facility "forever" if Plaintiff continued filing grievances ([#29-4] at 17); Defendant Keleman threatened Plaintiff with "harm" if Plaintiff continued filing grievances against Defendant Walker (*Id.*); Defendants Martz, Van Dyke, Gallagher, Hudspeth, Bryant, Binder, West, and Chavez harassed Plaintiff in retaliation for Plaintiff's filing grievances and lawsuits (*Id.* at 18-19); and on June 25, 2009, Defendant Pasaro shackled Plaintiff's ankles too tightly and threatened to "beat Plaintiff to death" for filing grievances (*Id.* at 19).  Furthermore, Plaintiff contends Defendants West, Hardrick, Dalton, Martinez, Luna, Keleman, Martz, Van Dyke, Gallagher, Hudspeth, Bryant, and Walker filed false COPD reports against Plaintiff in retaliation for Plaintiff's filing grievances and lawsuits against them and their colleagues. *See id.* at 17-19.  In Claim One of Plaintiff's Third Amended Complaint, Plaintiff alleges that Defendant Huertas threatened Plaintiff with "harm and injury" if Plaintiff continued to filed grievances, and Defendants Kaiser and Giordano threatened Plaintiff "with bodily injury and/or death" in retaliation for Plaintiff's filing of grievances.  [#29-3] at 4.

Regarding the threats of harm or adverse action in retaliation for Plaintiff's filing of grievances, "[t]he existence of an improper motive for disciplining a prisoner which results in interference with a constitutional right" may give rise to a cause of action pursuant to Section 1983.  *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990).  Access to the courts is a fundamental right protected by the Constitution, including the First Amendment

right to petition the government for redress of grievances. *Nordgren v. Milliken*, 762 F.2d 851, 853 (10th Cir. 1985). Because a prisoner must first file a grievance in order to ultimately gain access to courts to state a claim for relief pursuant to 42 U.S.C. § 1997e, punishing him for actually filing a grievance would state a claim for both denial of access to the courts and violation of the First Amendment. *See id.* ("It is also one aspect of the First Amendment right to petition the government for redress of grievances"); *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989) (holding that retaliation for filing lawsuits and administrative grievances "violates both the inmate's right of access to the courts and the inmate's First Amendment rights"). Therefore, "[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." *Maschner*, 899 F.2d at 947. "This principle applies even where the action taken in retaliation would be otherwise permissible." *Id.* at 948.

Nevertheless, a prisoner is "not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prisons merely because he has engaged in protected activity." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). That is, not "every response to a prisoner's exercise of a constitutional right gives rise to a retaliation claim." *Dawes v. Walker*, 239 F.3d 489, 492-93 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002). Instead, "in order to establish a First Amendment retaliation claim, a prisoner must demonstrate that he was (1) engaged in protected conduct; (2) that he suffered an adverse action; and (3) that a causal connection exists between the protected conduct and the adverse action." *Baldauf v. Hyatt*, 2008 WL 280839, at *7 (D. Colo. Jan. 31, 2008) (unpublished decision) (quoting *Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004)). "An inmate claiming retaliation must allege *specific facts* showing retaliation because of the

exercise of the prisoner's constitutional rights." *Peterson*, 149 F.3d at 1144 (internal quotation marks and citation omitted). "[A] plaintiff must prove that but for the retaliatory motive, the incidents to which he refers, . . . would not have taken place." *Id.*

### i.    Threats

Plaintiff's filing of grievances and lawsuits is protected conduct, and thus satisfies the first element of a First Amendment retaliation claim. *See, e.g., Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (holding that prison officials may not retaliate against prisoners for filing lawsuits or petitioning for redress of grievances); *Nordgren*, 762 F.2d at 853. However, the second requirement (*i.e.*, that Plaintiff suffered an adverse action) is missing. In large part, Plaintiff alleges that Defendants have verbalized *threats* of harm against Plaintiff in retaliation for the grievances and lawsuits that Plaintiff has filed.   In some contexts, threats of harm may constitute an adverse action, but such circumstances are not present here.   The second factor requiring an adverse action contemplates action that results in the chilling of the inmate's exercise of his constitutional rights. *See Parker v. Zavaras*, No. 08-cv-00737-MSK-KLM, 2011 WL 1211487, at *14 (D. Colo. Mar. 31, 2011) ("[T]hreats are actionable in a § 1983 claim, if they are sufficient to chill a person of reasonable firmness."); *Rogers v. Garcia*, No. 08-cv-02821-WYD-MJW, 2010 WL 3547432, at *4 (D. Colo. Sept. 3, 2010) ("[r]etaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights." (citation and internal quotation omitted)).

The record in this matter amply belies Plaintiff's suggestion that he has been dissuaded from filing grievances as a result of Defendants' alleged threats. *See Exhibits*, [#119-1] (grievances dated 12-12-07, 1-24-08, 6-25-08, 8-10-08, 10-24-08, 11-12-08, 12-3-08, 12-14-08, 12-18-08, 1-18-09, etc.). *See also Escobar v. Brown*, No. 06-cv-01222-CMA-

KLM, 2010 WL 5230874, at *5-6 (D. Colo. Dec. 16, 2010) (finding Plaintiff was not afraid to file grievances as a result of unsubstantiated allegations of threats of retaliation, as evidenced by Plaintiff's continuing filing of grievances). Furthermore, Plaintiff initiated three more lawsuits after the commencement of the case at hand: 10-cv-02050-CMA-KLM (open case); 11-cv-00169-CMA-KLM (open case); and 11-cv-01443-CMA-KLM (voluntarily dismissed without prejudice). Thus, the Court finds that Plaintiff's assertions do not satisfy the second element required for a claim of retaliation, because the alleged threats do not constitute an adverse action in terms of a retaliation claim in these circumstances, and in any event, Plaintiff's exercise of protected conduct was not chilled by the threats. Accordingly, the Court recommends that judgment be entered in favor of Defendants as to Plaintiff's dual Claim One allegations of retaliation based on alleged threats.

### ii.    False COPD Reports

Regarding Plaintiff's allegations that certain Defendants have filed false COPD (Code of Penal Discipline) reports against him, the Court finds that these contentions are unsubstantiated in the Second and Third Amended Complaints. However, even if Plaintiff had properly alleged such conduct, "prisoners have no constitutional protections for being falsely or wrongly accused of conduct which may result in the deprivation of certain liberty interests provided that the prisoner is afforded due process." *Escobar*, 2011 WL 3665391, at *8 (citing *Cooper v. Belcher*, No. 08-cv-01599-CMA-KMT, 2010 WL 3359709, at *20 (D. Colo. Aug. 25, 2010) (unpublished)). Further, "an 'inmate must allege more than his personal belief that he is the victim of retaliation.'" *Id.* (quotation omitted). Here, just as in *Escobar v. Mora*, Plaintiff has not alleged that he was denied due process concerning the filing of the allegedly false disciplinary reports. *See id.* Therefore, the Court recommends that judgment be entered in favor of Defendants West, Hardrick, Dalton,

Martinez, Luna, Keleman, Martz, Van Dyke, Gallagher, Hudspeth, Bryant, and Walker as to Plaintiff's conclusory and speculative assertions that these Defendants filed false COPD reports against him.

## IV. Conclusion

### A.    Defendants' Motion for Summary Judgment

Accordingly, the Court respectfully **RECOMMENDS** that Defendants' Motion for Summary Judgment [#119] be **GRANTED IN PART** and **DENIED IN PART** as stated herein.  The Court **RECOMMENDS** that Defendants' Motion be **GRANTED** to the extent that judgment be entered on the basis of qualified immunity in favor of Defendants as to:

1.    The portions of Plaintiff's Claim Two as stated in the Second and Third Amended Complaints regarding Plaintiff's procedural due process rights and right to equal protection of the law through the Fourteenth Amendment;

2.    All claims against Defendants Jones, Allen, Zalman, Holditch, Van Velder, and Pool due to lack of the requisite personal participation pursuant to Section 1983;

3.    All parts of Plaintiff's dual Claims One and Two that assert the use of excessive force due to Plaintiff's admitted absence of any physical injury;

4.    Plaintiff's request for compensatory damages due to Plaintiff's admitted absence of any physical injury;

5.    Plaintiff's allegations of Eighth Amendment violations related to housing;

6    Plaintiff's allegations of Eighth Amendment violations related to deliberate indifference to medical needs; and

7.    Plaintiff's allegations of retaliation in violation of the First Amendment based on threats and false filing of disciplinary reports.

The Court FURTHER **RECOMMENDS** that Defendants' Motion be **GRANTED** to the extent that judgment be entered in favor of Defendants as to Claim Three from the Second and Third Amended Complaints due to Plaintiff's failure to comply with the Colorado Governmental Immunity Act's notice requirement.

The Court FURTHER **RECOMMENDS** that Defendants' Motion be **GRANTED** to the extent that the portion of Plaintiff's Claim Two as stated in the Second and Third Amended Complaints regarding Plaintiff's Fourteenth Amendment substantive due process rights be **DISMISSED AS MOOT** and as subsumed within the allegations stated in both Complaints' Claim One.

The Court FURTHER **RECOMMENDS** that Defendants' Motion be **DENIED** as to their assertion that Plaintiff failed to exhaust certain subparts of his claims pursuant to the PLRA, due to Defendants' failure to support this contention with evidence as required by Fed. R. Civ. P. 56(c).

The Court FURTHER **RECOMMENDS** that Defendants' Motion be **DENIED** because Plaintiff has overcome the presumption of qualified immunity as to these portions of Claim One from his Second Amended Complaint [#29-4]:

- Against Defendants West, Hardrick, Dalton, Martinez, and Luna for the alleged deprivation of food in violation of the Eighth Amendment from September 8, 2007 through November 15, 2007;

- Against Defendant Keleman for the alleged deprivation of food in violation of the Eighth Amendment from November 15, 2007 through April 17, 2008;

- Against Defendants Martz, Van Dyke, Gallagher, Hudspeth, and Bryant for the alleged deprivation of food in violation of the Eighth Amendment from April 17, 2008 through October 3, 2008, and again from December 4, 2008

through February 24, 2009; and

- Against Defendants Binder, West, and Chavez, for the alleged deprivation of food in violation of the Eighth Amendment from February 24, 2009 through September 25, 2009;

- For punitive damages and declaratory judgment.  *See* [#29-4] at 27.

## B.   Instruction Regarding Objections

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

## C.   Final Pretrial Conference

IT IS FURTHER **ORDERED** that a Final Pretrial Conference is scheduled for **March 28, 2012**, at **10:00 a.m.** in Courtroom C-204, Second Floor, Byron G. Rogers United States Courthouse, 1929 Stout Street, Denver, Colorado.  Plaintiff shall appear by telephone at the Final Pretrial Conference by calling (303) 335-2770 at the designated time.

IT IS FURTHER **ORDERED** that the proposed pretrial order shall be submitted on or before **March 23, 2012**.  The proposed pretrial order to be submitted to the Magistrate

Judge under the ECF Procedures may be submitted in WordPerfect or pdf format and shall be emailed to the Magistrate Judge at *Mix_Chambers@cod.uscourts.gov.*

Attorneys and/or pro se parties not participating in ECF shall submit their proposed pretrial order on paper to the Clerk's Office.  However, if any party in this case is participating in ECF, it is the responsibility of that party to submit the proposed pretrial order pursuant to the District of Colorado ECF Procedures.

The parties shall prepare the proposed pretrial order in accordance with the form which may be downloaded in richtext format from the forms section of the court's website at *http://www.cod.uscourts.gov/Home.aspx.*  Instructions for downloading in richtext format are posted in the forms section of the website.

Dated:  January 19, 2012

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge